cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN SHILLINGTON, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> BORDER PATROL AGENT JAMES ) <br> GENOVESE, as an individual and agent of ) <br> the US Government, et al., ) <br> ) <br> Defendants. ) <br> ) | Civil No.05cv1671 (AJB) <br><br> Finds of Fact and Conclusions of Law |

This matter came on for a trial before the Honorable Anthony J. Battaglia, United States Magistrate Judge, pursuant to the written consent of all parties, on April 23, 2007. Plaintiff Edwin Shillington's claims against the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 2680(h) ("FTCA") were tried to the Court. Dwight F. Ritter appeared on behalf of Plaintiff. Samuel Bettwy and David Wallace of the United States Attorney's Office appeared on behalf of the United States.

### *Introduction*

Plaintiff brought this action against the United States under the FTCA for injuries allegedly suffered as he was being processed through the immigration arrival gate of Lindbergh Field in San Diego, California on May 6, 2004. Plaintiff's complaint was filed on August 23, 2005. Plaintiff alleges that the Border Patrol agents improperly detained him and used unreasonable force against him while he was detained in secondary inspection. Plaintiff claims that a border patrol agent grabbed him by the

neck and slammed his body into a chair causing severe bodily injuries. Plaintiff alleges that he suffered physical pain and permanent injury to his cervical spinal area as a result of the Border Patrol agents conduct on May 6, 2004. Plaintiff's complaint alleges causes of action under state law for assault and battery, negligence and negligent supervision, false imprisonment and false arrest.[1] Plaintiff seeks damages for injuries suffered. Defendant argued that any force used by the Border Patrol agents was both reasonable and necessary under the circumstances.

The Court having heard and considered the evidence both oral and documentary, the arguments of counsel, and being fully advised, makes the following findings of fact and conclusions of law based upon the preponderance of the evidence admitted at trial:

### *Findings of Fact:*

The Court makes the following findings of fact:[2]

1. Plaintiff left San Diego to go to Cabo San Lucas Mexico to attend a conference (World Molecular Engineering) with fellow students and professors from Scripps Research Institute (SRI). Plaintiff was one of about 100 passengers returning to Lindbergh Field on May 6, 2004 in San Diego. After exiting the international arrival gate, all of the passengers, including the Plaintiff proceeded to the lanes for immigration inspection by officers of the United States Customs and Border Patrol ("CBP").

2. When Plaintiff reached the primary inspector, CBP Officer Videna, he presented his passport and Form I-94, but the record indicates that he did not present a Form DS-2019,[3] which is a Department of State form that shows whether the alien is a student in good standing at the school they are attending.

---

[1] The parties stipulated to dismiss the constitutional tort claims and the individual defendants with prejudice. Only the United States and its employees remain as defendants in this case and the only remaining cause of action is a tort claim under the Federal Tort Claims Act. [Doc. No. 28]

[2] Any conclusion of law that is deemed to be a finding of fact is incorporated in this section by reference.

[3] Plaintiff claims that he had a copy of the form with him, however, the original form is required and there is no record that Plaintiff ever produced a copy of the form during his inspection at the primary station by CBP Videna.

3. Plaintiff was instructed by CBP Officer Videna to take a seat along the wall outside Secondary inspection. Plaintiff did not comply with the instructions. Officer Videna had to repeat the instructions several more times before Plaintiff complied.

4. When Plaintiff returned to his seat, he used his cell phone to call his father. Plaintiff then returned to Officer Videna's booth while Office Videna was assisting another passenger and insisted that Officer Videna talk to his father on his cell phone because his father could explain that there was no problem with Plaintiff's immigration paperwork. Officer Videna took Plaintiff's cell phone, turned it off, and told Plaintiff to return to the seating area. Plaintiff did not return to the seating area and became agitated that Officer Videna had hung up the cell phone on his father.

5. CBP Officer Gilbert Sanders, who was conducting inspections at a nearby booth, noticed the disruption that Plaintiff was creating, so he left his booth to escort Plaintiff away from Officer Videna to the seating area. Plaintiff immediately complied with Officer Sanders instructions and returned to the seating area.

6. Shortly thereafter, Plaintiff again left the seating area and approach the inspection booths. CBP Officer Genoves, who was also conducting inspections of arriving passengers at a nearby booth, called his supervisor Officer Garcia for assistance and then left his booth to stop Plaintiff from reaching Officer Videna's booth.

7. CBP Officer Genoves escorted Plaintiff away from the inspections booths back toward the seating area with minimal touching.[4] While Office Genoves was escorting Plaintiff back to the seating area, he told Plaintiff that if he did not remain seated as instructed, Officer Genoves would be forced to place him in a holding cell in secondary.

8. Upon hearing this, Plaintiff excitedly spun away in a twisting motion from Officer Genoves and assumed a combative stance. In response to Plaintiff's actions, Officer Genoves removed his baton from his belt and held it up in self defense. Upon seeing

---

[4] Officer Genoves stated that he had his left hand touching Plaintiff's left forearm and his right hand was lightly touching Plaintiff mid-back area.

|   |   |   |
|---|---|---|
| 1 |     | Officer Genoves raise his baton, Plaintiff immediately became compliant and sat down in |
| 2 |     | the seating area. |
| 3 | 9.  | Concurrent with this incident, Supervising Officer Garcia arrived in the inspection area |
| 4 |     | and Officer Garcia remained with Plaintiff, allowing Officer Genoves to return to his |
| 5 |     | inspection booth. |
| 6 | 10. | After the primary inspection of the other passengers, Plaintiff was taken into the second- |
| 7 |     | ary inspection area where he began to complain of neck pain and make allegations of |
| 8 |     | excessive force by the CBP Officers.  Supervising Officer Garcia contacted his supervi- |
| 9 |     | sor to report the incident and Officer Garcia's supervisor instructed him to contact the |
| 10 |    | paramedics. |
| 11 | 11. | Plaintiff had a small abrasion on his wrist.  CBP Officers provided Plaintiff with a band- |
| 12 |    | aid for the abrasion.  Plaintiff had no other obvious injuries.[5] |
| 13 | 12. | CBP Officers researched Plaintiff's status in their databases and informed Plaintiff that |
| 14 |    | he must return to the CBP downtown San Diego Offices on May 20, 2004, to present his |
| 15 |    | original Form DS-2019. |
| 16 | 13. | Paramedics arrived and assessed Plaintiff and took him to the emergency room at the |
| 17 |    | University of California San Diego Medical Center ("UCSD Medical Center").  UCSD |
| 18 |    | Medical Center diagnosed Plaintiff with a cervical strain. |
| 19 | 14. | Plaintiff return to the CBP downtown San Diego offices on May 20, 2004, to present his |
| 20 |    | Form DS-2019. |
| 21 | 15. | Plaintiff continues to suffer neck pain.  Plaintiff had a pre-existing moderate-severe |
| 22 |    | degenerative disc disease.  Plaintiff was examined on May 26, 2004 by Dr. Dodge for |
| 23 |    | complaints of tingling in arm and pain in the neck when carrying objects. |
| 24 | 16. | After less invasive treatments, such as physical therapy, failed to alleviate Plaintiff's |
| 25 |    | pain, Dr. Dodge recommended, and Plaintiff under went, surgery to fuse the C4, C5, C6 |
| 26 |    | and C7 vertebrae. |

---

[5] CBP Officers took several photos of the Plaintiff to demonstrate that he had no other obvious injuries, however, the quality of the reproductions was extremely poor and the originals could not be located.

17. Plaintiff incurred medical expenses associated with the treatment of his neck pain and cervical strain in the amount of $69,289.50. Of these, $39,729.70 was accepted as payment in full by the treatment providers.[6]

### *Conclusions of Law*

The Court makes the following conclusions of law:[7]

#### *A. Assault and Battery (second cause of action).*

1. The United States can be held liable for an assault and battery committed by, or at the direction of, its employees.

2. The FTC waives sovereign immunity for assault and battery. Under the FTCA, the law of the jurisdiction where the tort occurred governs the rights and liabilities of the parties. *Richardson v. United States*, 369 U.S. 1, 11 (1962); *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 838 (9th Cir. 1995).

3. Under California law, in order to succeed on their claim for assault, plaintiff bears the burden of showing that (1) employees of the United States intended to place plaintiff in apprehension of harmful or offensive contact, and (2) plaintiff was in fact placed in such apprehension. To prove his claim for battery, plaintiff must show (1) employees of the United States intentionally did an act which resulted in harmful or offensive contact with plaintiff's person, (2) plaintiff did not consent to the contact, and (3) the harmful or offensive contact caused injury to plaintiff. RESTATEMENT (SECOND) OF TORTS §§ 21 and 13 (2004).

4. Under California law, plaintiff bears the burden of proving that employees of the United States used unreasonable force when detaining or extracting them from holding cell A. *Edson v. Anaheim*, 63 Cal. App. 4th 1269 (1998).

---

[6] The parties disagreed on which of these amounts are the appropriate measure of the damage claim. In light of the Plaintiff's failure to establish liability on behalf of the United States in this case, the Court need not resolve this issue.

[7] Any finding of fact that is deemed to be a conclusion of law is incorporated in this section by reference.

5.    The plaintiff has failed to show, by a preponderance of the evidence, that employees of the United States intended to or in fact placed plaintiff in apprehension of harmful or offensive conduct, or intended to or in fact did an act which resulted in harmful or offensive contact with Plaintiff's person.

6.    To the extent that plaintiff has shown that employees of the United States used force against him when escorting him back to the seating area, the amount of force used by such employees was reasonable in light of the surrounding facts and circumstances.

7.    Therefore, the United States is not liable to plaintiff for assault and/or battery.

### B. *Negligence (third cause of action).*

8.    The FTCA waives sovereign immunity for "negligent" acts or omissions of any employee that causes personal injury. 28 U.S.C. § 1346(b). Under the FTCA, the law of the jurisdiction where the tort occurred governs the rights and liabilities of the parties. *Richardson*, 369 U.S. at 11; *Beech Aircraft Corp.,* 51 F.3d at 838.

9.    Under California law, to establish negligence, plaintiff must demonstrate that employees of the United States breached a duty owed to them, and that such breach was the cause of plaintiff's damages. *Nally v. Grace Community Church*, 47 Cal.3d 278, 253 (1988).

10.    Under California law, officers have a duty not to use excessive force. *Robinson v. Solano County*, 278 F.3d 1007, 1017 (9th Cir. 2002). The United states also has a duty to train and supervise its employees. *Id*.

11.    Plaintiff has failed to show, by a preponderance of the evidence, that the amount of force used by employees of the United States to detain Plaintiff and escort him back to the seating area was excessive or unreasonable. Plaintiff has further failed to show, by a preponderance of the evidence, that the United States failed to train and supervise its employees.

12.    Therefore, the United States is not liable to plaintiff for negligence.

### C. *False Imprisonment/False Arrest (forth cause of action).*

13. Under the FTCA, the United States is liable for common law torts committed by federal employees within the scope of their federal employment. See 28 U.S.C. §§ 1346(b), 2674.

14. The FTCA allows liability for false arrest or false imprisonment when such torts are committed by federal law enforcement officers. 28 U.S.C. § 2680(h).

15. Liability is determined by the tort law of the state where the claim arose. 28 U.S.C. § 2680(h).

16. Since Plaintiff was originally arrested and taken into custody in California, the court must look to the laws of California to determine whether he was falsely imprisoned and falsely arrested; in California, those two offenses coalesce. *See Watts v. County of Sacramento*, 256 F.3d 886, 891 (9th Cir.2001) ("Under California law, the tort of false arrest and false imprisonment are not separate torts, as false arrest is 'but one way of committing a false imprisonment.' ") (*quoting Asgari v. City of Los Angeles*, 15 Cal.4th 744, 763, 63 Cal.Rptr.2d 842, 937 P.2d 273 (1997)).

17. Under California law, false arrest, or false imprisonment, is "the unlawful violation of the personal liberty of another." Cal. Penal Code § 236; *see Collins v. City & County of San Francisco*, 50 Cal.App.3d 671, 123 Cal. Rptr. 525, 526 (1975) (stating that false arrest is "but one way of committing a false imprisonment, and they are distinguishable only in terminology"). "The elements of a tortious claim of false imprisonment are: (1) the non-consensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.*, 80 Cal.App.4th 485, 95 Cal.Rptr.2d 316, 323 (2000); *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 703, 30 Cal.Rptr.2d 18, 872 P.2d 559 (1994)

18. A false imprisonment action may also be maintained if "the defendant unlawfully detains the [plaintiff] for an unreasonable period of time" after an otherwise legal seizure or arrest. *Lincoln v. Grazer*, 163 Cal.App.2d 758, 329 P.2d 928, 930 (1958).

19. The length of time can be as brief as 15 minutes. *Alterauge v. Los Angeles Turf Club* 97 Cal. App.2d 735, 736, 218 P.2d 802 (1950) . Restraint may be effectuated by means of

|   |   |   |
|---|---|---|
| 1 |  | physical force, *Moffat v. Buffums' Inc.*, 21 Cal. App.2d 371, 374, 69 P.2d 424(1937) , |
| 2 |  | threat of force or of arrest, *Vandiveer v. Charters,* 110 Cal. App. 347, 351, 294 P. 440 |
| 3 |  | (1930), confinement by physical barriers, *Schanafelt v. Seaboard Finance Co.,* 108 Cal. |
| 4 |  | App.2d 420, 423, 239 P.2d 42 (1951), or by means of any other form of unreasonable |
| 5 |  | duress. *See* Rest.2d Torts, § 40A. |
| 6 | 20. | The only mental state required to be shown to prove false imprisonment is the intent to |
| 7 |  | confine, or to create a similar intrusion. Prosser & Keeton, Torts (5th ed. 1984) § 11, pp. |
| 8 |  | 52-53; *cf. Weaver v. Bank of America* (1963) 59 Cal.2d 428, 433-435, 30 Cal. Rptr. 4, |
| 9 |  | 380 P.2d 644 [bank's act of failing to honor check, inadvertently leading to the plaintiff's |
| 10 |  | arrest and imprisonment, cognizable as a tort of negligence].) Thus, the intent element of |
| 11 |  | false imprisonment does not entail an intent or motive to cause harm; indeed false |
| 12 |  | imprisonments often appear to arise from initially legitimate motives. *See, e.g.,* |
| 13 |  | *Schanafelt v. Seaboard Finance Co.*, 108 Cal.App.2d 420, 422-423, 239 P.2d 42 (judg- |
| 14 |  | ment against defendant upheld where defendant used false imprisonment in repossession |
| 15 |  | of plaintiff's furniture after payment delinquency.). |
| 16 | 21. | Plaintiff has failed to show, by a preponderance of the evidence, that the employees of |
| 17 |  | the United States unlawfully detained him for an unreasonable period of time after an |
| 18 |  | otherwise legal seizure or arrest.  Plaintiff was the cause of any delay in his detention. |
| 19 |  | Plaintiff's repeated failure to cooperate with CBP Officers' instructions to remain in the |
| 20 |  | seating area and the medical attention requested by Plaintiff and provided by the employ- |
| 21 |  | ees of the United States was the cause of Plaintiff's delayed detention.  Plaintiff's entire |
| 22 |  | period of detention consisted of approximately 3 to 4 hours on May 6, 2004. *Munyua v.* |
| 23 |  | *United States*, 2005 WL 43960 at *1 (N.D. Cal. 2005) (detention did not constitute an |
| 24 |  | appreciable length of time for the purposes of finding liability for false imprisonment |
| 25 |  | because the detention and subsequent release occurred within the course of a single day). |
| 26 | 22. | CBP Officers were justified in detaining Plaintiff in the Secondary Inspection area |
| 27 |  | pending confirmation of his immigration status.  CBP Officers have broad authority to |
| 28 |  | detain an applicant for admission to the United States.  *See* 8 U.S.C. § 1125 (a)(1)(A)(3); |

19 U.S.C. § 1582. Border detentions involve a distinct set of considerations and require different administrative procedures. *Rhoden v. United States*, 55 F.3d 428, 432, n. 7 (9th Cir. 1995). Routine searches and seizures at the border do not require probable cause, a warrant, or reasonable suspicion. *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985); *United States v. Ramos-Saenz*, 36 F.3d 59, 61 (9th Cir. 1994) ("the national border rest[s] on different considerations and different rules of constitutional law from domestic regulations"). Federal case law provides a wide latitude for standards of detention at the border as compared to detentions in the interior of the country. *Montoya de Hernandez*, 473 U.S. at 538.

23. Plaintiff failed to provide the proper documentation to CBP Officers upon entry to the primary inspection area at the international arrival gate at Lindbergh Field airport. Plaintiff was required to produce the original DS-2019 form upon entry and did not. 8 U.S.C. § 1227(a)(1)(B); 8 C.F.R. 235.1 (d)(1) ("Each alien seeking admission at a United States port-of-entry must present whatever documents are required and must establish to the satisfaction of the inspecting officer that the alien is not subject to removal under the immigration laws").

24. Plaintiff's has failed to demonstrate, by a preponderance of the evidence, his claims of false arrest and false imprisonment by employees of the United States. Plaintiff's claims of false imprisonment and false arrest should be dismissed as a matter of law, because Plaintiff admits that he did not have an original DS-2019 with him when he applied for re-admission to the United States and Plaintiff was never arrested because CBP Officers were authorized to detain Plaintiff at the port of entry until the officers could determine whether he should be admitted or paroled for deferred inspection.

25. Therefore, the United States is not liable to the Plaintiff for false imprisonment or false arrest.

### *Conclusion*

For the reasons set forth above, the Court finds:

1.    CBP Officer Videna had lawful authority to refer Plaintiff for secondary inspection due to Plaintiff's failure to provide an original DS-2019 during primary inspection.
2.    CBP Officer Genoves was authorized to use and/or threaten the use of reasonable force to cause Plaintiff to remain in the seating area near the secondary inspection area.
3.    Plaintiff spun away from CBP Officer Genoves and assumed an aggressive stance resisting the officer's instructions.
4.    CBP Officer Genoves was authorized to use and/or threaten the use of reasonable force to defend himself against Plaintiff's evasive and threatening movements.
5.    CBP Officer Genoves did not grab Plaintiff by the neck or forcefully cause Plaintiff to be seated in the seating area.
6.    CBP Officer Genoves used only that force that was reasonable to escort Plaintiff to the seating area for secondary inspection.
7.    Given Plaintiff's pre-existing, underlying degenerative disc disease, only slight, if any, force was needed to cause Plaintiff's cervical strain.
8.    Plaintiff's actions in spinning away from Officer Genoves was the likely cause of his injuries.

There being no just reason for delay, the Clerk is hereby directed to enter judgment in favor of Defendant the United States, and against the Plaintiff on Plaintiff's Complaint, terminating this case.

IT IS SO ORDERED.

DATED: May 24, 2007

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court

cc: Edwin Shillington
     109 Everwillow Close SW,
     Calgary, Canada T2Y 4G5